# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEITH SOMERS, | 1:09-cv-01590-AWI-DLB (HC) |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| KEN CLARK, | [Doc. 1] |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation (CDCR) following his 1993 conviction for second degree murder. Petitioner was sentenced to fifteen years to life.

In the instant petition, Petitioner does not challenge the validity of his conviction; rather, he challenges the Board of Parole Hearings' 2007 (hereinafter Board) decision finding him unsuitable for release.

In 2008, Petitioner filed a petition for writ of habeas corpus in the Los Angeles County Superior Court, challenging the Board's 2007 decision. (Exhibit A, to Answer.) On June 25, 2008, the superior court denied the petition in a reasoned decision. (Exhibit B, to Answer.)

Petitioner filed a petition in the California Court of Appeal, Second Appellate District. (Exhibit C, to Answer.) On October 10, 2008, the Court of Appeal denied the petition in a

reasoned decision (the last reasoned decision of the state courts) stating that "[t]he record submitted reflects some evidence that petitioner constitutes a current threat to public safety to support the challenged decision. (*In re Lawrence* (2008) 44 Cal.4th 1181, 1212; *In re Shaputis* (2008) 44 Cal.4th 1241, 1254-1261.)" (Exhibit D, to Answer.)

Petitioner then filed a petition in the California Supreme Court, which was summarily denied. (Exhibits E & F, to answer.)

Petitioner filed the instant federal petition on August 26, 2009. (Court Doc. 1.) Respondent filed an answer to the petition on November 16, 2009, and Petitioner filed a traverse on December 21, 2009. (Court Docs. 15, 16.)

## STATEMENT OF FACTS[1]

On November 15, 1992, at approximately 2:20 a.m., Petitioner was observed driving his vehicle at a high rate of speed outside a night club parking lot. Instead of properly exiting the parking lot through the driveway, Petitioner's car crossed over the sidewalk and jumped the curb, causing several people to leap out of the way. Petitioner's vehicle then struck a hot dog vendor parked in front of the club, causing the vendor to jump backwards to avoid being struck. Two sheriff's deputies observed the incident and pursued Petitioner reaching speeds of approximately 70 to 80 miles an hour. Petitioner weaved in and out of the traffic, passing on the right side of the lane or entering the opposite direction of traffic to get around stopped traffic. After Petitioner failed to make a curve, he slid into oncoming traffic and collided with a vehicle driven by Angel Luis Austrom who was impaled on a portion of the steering wheel which severed his aorta, killing him. Three passengers in the vehicle were also injured. The momentum of Petitioner's vehicle caused it to continue traveling into the opposite lane where it collided with a taxicab, causing injuries to the driver. Deputies arrived just moments later and saw Petitioner inside his stopped vehicle. When they told him to put his hand in the air, he continued reaching into the back of his car. He obtained his cellular phone and made a phone call, and was repeatedly telling someone that he needed to be bailed out of jail. When one deputy opened the driver's door, he

---

[1] These facts are taken from the transcript of the 2007 Board hearing.

could instantly smell a strong odor of alcohol.  Petitioner's blood alcohol level was .14 percent at 3:50 a.m., and he tested positive for cocaine.

(Exhibit A, Transcript at 12-14, hereinafter "Transcript".)

## DISCUSSION

I.   Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.  Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Petitioner is in custody of the California Department of Corrections pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the threshold requirement of being in custody pursuant to a state court judgment. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v. Lambert, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petition is not challenging his underlying state court conviction.'").

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death  Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003).  Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in

3

1  light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see <u>Lockyer</u>,
2  538 U.S. at 70-71; see <u>Williams</u>, 529 U.S. at 413.
3      As a threshold matter, this Court must "first decide what constitutes 'clearly established
4  Federal law, as determined by the Supreme Court of the United States.'" <u>Lockyer</u>, 538 U.S. at 71,
5  *quoting* 28 U.S.C. § 2254(d)(1).  In ascertaining what is "clearly established Federal law," this
6  Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as
7  of the time of the relevant state-court decision." <u>Id.</u>, *quoting* <u>Williams</u>, 592 U.S. at 412. "In other
8  words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or
9  principles set forth by the Supreme Court at the time the state court renders its decision." <u>Id</u>.
10     Finally, this Court must consider whether the state court's decision was "contrary to, or
11 involved an unreasonable application of, clearly established Federal law." <u>Lockyer</u>, 538 U.S. at
12 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may
13 grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme]
14 Court on a question of law or if the state court decides a case differently than [the] Court has on a
15 set of materially indistinguishable facts." <u>Williams</u>, 529 U.S. at 413; see also <u>Lockyer</u>, 538 U.S.
16 at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the
17 state court identifies the correct governing legal principle from [the] Court's decisions but
18 unreasonably applies that principle to the facts of the prisoner's case." <u>Williams</u>, 529 U.S. at
19 413.
20     "[A] federal court may not issue the writ simply because the court concludes in its
21 independent judgment that the relevant state court decision applied clearly established federal
22 law erroneously or incorrectly.  Rather, that application must also be unreasonable." <u>Id</u>. at 411.
23 A federal habeas court making the "unreasonable application" inquiry should ask whether the
24 state court's application of clearly established federal law was "objectively unreasonable." <u>Id</u>. at
25 409.    Petitioner has the burden of establishing that the decision of the state court is contrary to
26 or involved an unreasonable application of United States Supreme Court precedent. <u>Baylor v.
27 Estelle</u>, 94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the
28 states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a

state court decision is objectively unreasonable. See Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

In this instance, the last reasoned decision of the California Court of Appeal, Second Appellate District denied the petition for finding some evidence to support the Board's decision that he remains a current threat to public safety if released. (Exhibit D, to Answer.)

II.     Review of Claims

A parole release determination is not subject to all the due process protections of an adversary proceeding. Pedro v. Oregon Parole Board, 825 F.2d 1396, 1398-99 (9th Cir. 1987); see also Greenholtz, 442 U.S. at 12 (explaining that due process is flexible and calls for procedural protections that particular situations demand). "[S]ince the setting of a minimum term is not part of a criminal prosecution, the full panoply of rights due a defendant in such a proceeding is not constitutionally mandated, even when a protected liberty interest exists." Pedro, 825 F.2d at 1399; Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir.1987). At a state parole board proceeding, the only process to which an inmate is entitled is: 1) the inmate must receive advance written notice of a hearing, Pedro, 825 F.2d at 1399; 2) the inmate must be afforded an "opportunity to be heard," Greenholtz, 442 U.S. at 16; 3) if the inmate is denied parole, the inmate must be told why "he falls short of qualifying for parole," Id.; and 4) the decision of the Board must be supported by "some evidence" having an indicia of reliability. Superintendent, Mass. Correc. Inst. v. Hill, 472 U.S. 445, 455 (1985); Cato v. Rushen, 824 F.2d 703, 705 (9th Cir.1987).

"In Superintendent v. Hill, the Supreme Court held that 'revocation of good time does not comport with 'the minimum requirements of procedural due process,' unless the findings of the prison disciplinary board are supported by some evidence in the record.' 472 U.S. 445, 454 (1985), *quoting* Wolff v. McDonnell, 418 U.S. 539, 558 (1974)." Sass, 461 F.3d at 1128. In

5

determining whether the "some evidence" standard is met, the Court need not examine the entire record, independently assess the credibility of witnesses, or re-weigh the evidence. Id. Rather, the Court must determine whether there is any evidence in the record that could support the conclusion of the disciplinary board. Id., *citing* Superintendent v. Hill, at 455-56. Although Hill involved the accumulation of good time credits, the same standard applies to parole, as both situations "directly affect the duration of the prison term." Id., *citing* Jancsek v. Oregon Bd. of Parole, 833 F.2d at 1390.

In making a determination whether an inmate is suitable for parole, the Board is guided by the following regulations:

> (a) General. The panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for a denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.
>
> (b) Information Considered. All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

15 Cal. Code Regs. §§ 2402(a) and (b).

In this case, with regard to the procedural protections outlined in Greenholtz, Petitioner was provided all that is required. Petitioner was given advance notice of the hearing, he was offered representation by counsel at the hearing, he was granted an opportunity to submit materials for the Board's consideration and an opportunity to be heard during the hearing, and he was provided a written decision explaining the reasons why parole was denied.

The California Supreme Court clarified the standard of the review applicable to parole decisions by the Board or Governor in In re Lawrence, 44 Cal.4th 1181 (2008). The applicable standard "is whether some evidence supports the *decision* of the Board or the Governor that the inmate constitutes a current threat to public safety, and not merely whether some evidence


confirms the existence of certain factual findings." Id. at 1212 (emphasis in original and citations omitted). As to the circumstances of the commitment offense, the Court concluded that

> although the Board and the Governor may rely upon the aggravated circumstances of the commitment offense as a basis for a decision denying parole, the aggravated nature of the crime does not in and of itself provide some evidence of current dangerousness to the public unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety.

Id. at 1214.[2]

In finding Petitioner unsuitable for parole at the 2007 hearing, the Board relied primarily on the circumstances of the commitment offense, but also cited Petitioner's prior criminal history and lack of insight underlying the offense.

First, the Board found that multiple victims were injured and/or killed during the commission of the commitment offense.[3] 15 Cal. Code Regs. § 2402(c)(1)(A). While driving his vehicle under the influence of alcohol, Petitioner jumped a curb, struck a hot dog vendor and sped away at a high rate of speed while police pursued him. Petitioner eventually crossed into oncoming traffic and collided with a car, killing the driver and injuring the three passengers. Petitioner continued to drive and struck another vehicle, injuring two more people. At the time, Petitioner was on probation for a previous driving under the influence conviction. Thus, he was

---

[2] To this end, the Court recognized that its prior determination of "a focus upon the egregiousness of the commitment offense to the exclusion of other relevant evidence has proved in practice to obscure the core statutory emphasis upon current dangerousness, the manner in which courts apply the some evidence standard in evaluating the evidentiary value of the gravity of the commitment offense requires some clarification." In re Shaputis, 44 Cal.4th 1241, 1254 (2008) (citing Lawrence, 44 Cal.4th at 1213-1214.)

[3] Pursuant to Title 15, of the California Code of Regulations, Section 2402(c) sets forth circumstances tending to demonstrate unsuitability for parole when the prisoner committed the offense in an especially heinous, atrocious or cruel manner. The factors to be considered include:
(A) Multiple victims were attacked, injured or killed in the same or separate incidents.
(B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
(C) The victim was abused, defiled or mutilated during or after the offense.
(D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
(E) The motive for the crime is inexplicable or very trivial in relation to the offense.

15 Cal.Code Regs. § 2402(c)(1)(A)-(E).

well aware of the consequences of his erratic behavior.  The Board expressed legitimate concern that despite the passage of fifteen years, Petitioner had failed to gain insight and remorse for his egregious conduct.  The Board considered the psychological evaluation by Doctor Rueschenberg pursuant to 15 Cal. Code Regs. § 2402(c)(5).  This factor is borne out by Petitioner's own statement to the psychologist in which Petitioner described his offense as follows: "I drove drunk, collision, one young man died instantly on impact, second degree, 15 to life.  I've been fighting my case for 14 years.  My attorney was disbarred for what he did." (Transcript at 39.) Petitioner then indicated that his car slid on oil when he was attempting to make a lane change.  (Id. at 40.)  Dr. Rueschenberg opined:

> Mr. Somers' description of the crime does not match the description of the probation officer's report, POR, Mr. Somers noted the oil slick, but did not mention the high rate of speed chase, weaving in and out of traffic and passing on the right to get around stopped traffic.  To be sure, he had an inadequate defense to say the least.  However, he could serve his cause better if he would state exactly what he did.  The injustice from the inadequate defense would carry more weight if he were to be able to describe his crime fully.  He does himself disservice by not being more forthcoming and complete.  He has the opportunity to do so at his Board hearing and keep himself on track . . .

(Id. at 40-41.)

Contrary to the record, Petitioner continues to assert that the collision was caused by an oil spill in the road.  The Board reasonably concluded that Petitioner continued to mitigate the offense by claiming there was an oil spill and had not come to terms with the causative factors of the commitment offense.  The Board expressed its opinion that Petitioner presented as very narcissistic and believed that his statements to them were not sincere.  (Transcript at 98-99.) This was properly considered by the Board because a prisoner's credibility is a vital aspect of the its consideration of "all relevant, reliable information . . . [including a prisoner's] past and present attitude toward the crime, in rendering a determination of whether the prisoner remains an unreasonable risk of danger to society if released.  15 Cal. Code Regs. § 2402(a), (b).  In light of the record before the Board, it was reasonable to conclude that Petitioner failed to demonstrate a sufficient level of insight into the commitment offense, and given the horrific nature of the offense, some evidence supports the finding that it remains indicative of his current level of dangerousness.  See In re Shaputis, 44 Cal.4th at 1259-1260 (concluded that lack of insight into

the commitment offense rendered aggravating nature of the crime to be probative of the inmate's current dangerousness); In re Lawrence, 44 Cal.4th at 1214.

The Board also considered Petitioner's prior criminal record, including his previous DUI conviction and driving with a suspended license-both committed in the same year as the commitment offense. Petitioner's prior conviction clearly provided notice to him of the grave consequences of driving while under the influence. 15 Cal. Code Regs. § 2402(b). Petitioner was 28 years old at the time of the offense and admitted he began drinking alcohol at the age of 16 and did so on a regular basis. He also admitted to using drugs during this same time period. (Transcript at 22-23.)

The Board also considered the factors in favor of suitability pursuant to 15 Cal. Code Regs. § 2402(d). The Board commended Petitioner for having not received any rules violation reports during his incarceration, participation in computer programming, Alcoholics Anonymous and Narcotics Anonymous, Effective Communication, Beyond Anger, Parenting, Victim's Awareness, and religious programs. Petitioner had also received several laudatory chronos with respect to his work in the law library. (Transcript at 102-103.) However, the Board concluded, that these positive aspects did not outweigh the factors of unsuitability.

In sum, considering that Petitioner had only been incarcerated for 13 and a half years on his 15 years-to-life sentence, the Board's finding that Petitioner posed an unreasonable risk to public safety based on the circumstances of the commitment offense, lack of insight into the offense, and prior conviction for drunk driving, is supported by some evidence. Therefore, the Court of Appeal's decision was not contrary to or an unreasonable application of Federal law as determined by the Supreme Court. Furthermore, Petitioner has not shown that the Court of Appeal based its decision on an unreasonable determination of the facts in light of the evidence presented.

## RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The instant petition for writ of habeas corpus be DENIED; and
2. The Clerk of Court be directed to enter judgment in favor of Respondent.

1  This Findings and Recommendation is submitted to the assigned United States District
2  Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the
3  Local Rules of Practice for the United States District Court, Eastern District of California.
4  Within thirty (30) days after being served with a copy, any party may file written objections with
5  the court and serve a copy on all parties.  Such a document should be captioned "Objections to
6  Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served
7  and filed within fourteen (14) days after service of the objections.  The Court will then review the
8  Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that
9  failure to file objections within the specified time may waive the right to appeal the District
10 Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

    IT IS SO ORDERED.

    Dated:   **March 4, 2010**                    **/s/ Dennis L. Beck**
                                               UNITED STATES MAGISTRATE JUDGE